OPINION
{¶ 1} Brian Boude is appealing the judgment of the Dayton Municipal Court, which found him guilty of criminal trespass and telephone harassment.
 {¶ 2} Brian Boude was in an "on and off" relationship with Danyel Schell for approximately four years. According to Schell, the couple's relationship ended near the beginning of October of 2002. At this time, Schell was living with her mother, Carmela Schell,[1] at her home. Schell testified that she had informed Boude that the relationship was over and that she no longer wanted him to call her or come to her home. On October 9, 2002, Boude called the Schell residence, and Carmela told him "not to call [her] house anymore, [Schell] did not want to see him or speak to him anymore."
 {¶ 3} Boude continued to call and come by the Schell house through the month of October and the week of November 5, 2002. Schell testified that Boude would call five to ten times a day. Carmela and Schell put a trace on the phone to prove that Boude was calling them. On October 14, 2002, Boude called, and Carmela answered the phone. Carmela testified that when she reminded him that she had told him not to call, Boude stated, "[Schell] is over 21 and that gave him the right to talk to her even though she is in your house."
 {¶ 4} On October 31, 2002, Boude came to the Schell residence, knocked on her door, and peered in the windows of the new truck Schell had purchased. Both Schell and a neighbor testified that they observed Boude walking around Schell's new truck and looking in it. Almost immediately thereafter, Boude called Schell and left a voice mail. This voice mail, along with a message from October 22nd and the 30th, was entered at trial. In the messages, Boude pleads with Schell to return his calls, states that he is "not doing well", and accuses her of having a new boyfriend. Additionally, in Boude's October 31st
call, Boude initially congratulates Schell on her new truck but then proceeds to again resort to pleading with her to call him, accusing her of having a new boyfriend, and stating that he is "not doing good" with the breakup. Specifically in this message, Boude curses at Schell and questions how she could no longer allow him in her life and how she could not have any contact with him. On October 31st, Boude calls Schell's house three times within six minutes.
 {¶ 5} On November 4, 2002, Boude again called Schell's home. Schell testified that Boude said he was sorry and discussed killing himself. Schell testified that she had told him that he was not supposed to call her and that she then had laid the phone down. Boude testified that Schell talked to him for an extended period of time and gave him permission to bring some items over to her home the next day. On November 5th, Boude came to Schell's house and left flowers, a book, balloons and a card. Additionally, Boude knocked on the door of the home and peered into Schell's truck again before leaving.
 {¶ 6} Both Carmela and Schell testified that they did not give permission to Boude to call their home or to be on their premises on October 31st or November 4th and 5th. Boude admits that he made the phone calls to the Schells' residence and that he came by the residences on October 31st
and November 5th. However, Boude claimed that neither Carmela or Schell had ever told him not to call or come by the house.
 {¶ 7} Additionally, the State presented evidence of several emails from Boude to Schell spanning from October 27th until November 6th. The emails generally consist of Boude pleading with Schell to call him, accusing her of being in a new relationship, and questioning her over how she could have ended the relationship and her refusal to talk to him. Further, Boude states that he does not want to live without her, that he is "going crazy," and that he "would rather be dead then {SIC} to live without [her] the rest of [his] life." Moreover, in a November 3rd email, Boude describes Schell as never wanting to talk to him again. In a November 4th email, Boude tells Schell that he has bought her something and will bring it by the following day.
 {¶ 8} In the October 27th email, Boude states that he had made every attempt to contact Schell and that it is "obvious that [she] want[s] nothing more to do with [him] (changed numbers, blocked e-mail no call backs)." Boude claims that this particular email was not from him. However, the author identifies himself as "brian", writes in the same style and with similar content as Boude's other emails, and clearly believes himself to be Schell's boyfriend.
 {¶ 9} These emails were in contrast to Boude's testimony that up to and including November 4th, the couple was still communicating, discussing buying a truck together, and getting married. Boude claims that he thought everything was "fine" in his relationship with Schell and that this was the reason he continued to call and come to her house. Additionally, this claim was countered by the voice mail Boude left on October 31st in which he asks Schell how she could abstain from having any contact with him. In contrast to Boude's claims that everything is "fine" in the relationship, the voice mails and emails demonstrate that from October 22nd until November 4th, Boude is begging Schell to return his calls and messages.
 {¶ 10} On November 12, 2002, Boude was charged with five criminal offenses, menacing by stalking, two counts of criminal trespass, and two counts of telephone harassment. Subsequently, Boude was also charged with a protection order violation on December 12, 2002.
 {¶ 11} A visiting judge was obtained to preside over the trial that was held on March 3, 2003. At the conclusion of the State's case, the trial court granted Boude's Rule 29 motion regarding the menacing by stalking and protection order charges. At the conclusion of the trial, the court took the telephone harassment and criminal trespass charges under advisement. On May 13, 2003, the court filed a written decision finding Boude guilty of two counts of criminal trespassing and two counts of telephone harassment. In the trial court's entry, the court found that there was not proof beyond a reasonable doubt that Schell had informed Boude not to call her or come around her home. However, the court stated that it was convinced that Carmela had informed Boude not to call the home or to come to the residence, which Boude had ignored. Therefore, the lower court found him guilty of the remaining charges.
 {¶ 12} Boude was subsequently sentenced to thirty days in jail on each of the four counts and ordered to pay a $100.00 fine and court costs on each count. The court continued on to suspend the jail time on the condition of no further violations and to suspend the fines on two of the counts. Boude has filed this appeal from his conviction.
 {¶ 13} Boude raises the following assignments of error:
 {¶ 14} "[1.] The trial court's judgment finding appellant guilty of two (2) counts of telephone harassment was against the manifest weight of the evidence and contrary to law.
 {¶ 15} "[2.] The trial court's judgment finding appellant guilty of two (2) counts of criminal trespass was against the manifest weight of the evidence and contrary to law."
Appellant's first assignment of error:
 {¶ 16} Boude argues that in order to be convicted of telephone harassment the State had to prove that Schell told Boude not to call, not just that Carmela told him not to call. Additionally, Boude argues that any prohibition on calling the Schell home was rescinded by Schell because of their mutual communication at the time. We disagree.
 {¶ 17} R.C. 2917.21 (A) defines telecommunication harassment, stating:
 {¶ 18} "No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
 {¶ 19} "* * *
 {¶ 20} "(5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises."
 {¶ 21} Initially, Boude argues that the State had to prove that Schell personally told Boude to stop calling her residence and to no longer come to the residence. Boude asserts that as this was not proven as noted by the trial court in its entry, his conviction for telephone harassment is against the manifest weight of the evidence.
 {¶ 22} The trial court stated in its entry that although the factual evidence was in too great of dispute to conclude that Schell had directly told Boude to cease calling her or coming to her residence, the evidence was clear that Carmela had told him to no longer call or come to the residence. The trial court found that under the statute the fact that Carmela informed Boude that he could no longer call the residence was sufficient. We agree. The statute provides that the caller shall not knowingly call the residence if "the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises." Carmela would certainly qualify as a person at the premises who had told Boude not to telephone the premises or specifically not to call Schell. We do not agree with Boude that the statute required that the State prove that Schell had told Boude not to call.
 {¶ 23} Furthermore, the fact that Schell was the complainant in the complaint also did not impose such a requirement. The State gave Boude a Bill of Particulars that stated that both Schell and Carmela had given warnings to Boude not to call the premises or come by the premises. Although the complaint only stated that the recipient of the phone calls had told Boude to stop calling rather than stating that the recipient or another person at the premises had told Boude to cease his calls, this does not render his conviction contrary to law. The complaint cited Boude to the appropriate section of the statute that he was accused of violating and the Bill of Particulars from the State told Boude that the State alleged that both Carmela and Schell had told Boude to cease calling the residence. Therefore, Boude was on notice that the warnings alleged by the State telling him not to call or come by the premises came from both Schell and Carmela. The fact that Schell signed the complaint does not change the situation. The victim is not required to sign as the complainant. State v. Robinette (1997), 118 Ohio App.3d 450,455; see also State v. Cragon, (April 15, 1994) Ashtabula App. No. 93-A-1789. The complaint provided Boude with adequate notice of the offense with which he was charged. Boude's conviction was not against the manifest weight of the evidence and contrary to law as a result of his conviction being based on Carmela's warning that he not call the residence rather than a warning from Schell.
 {¶ 24} Additionally, Boude argues that the evidence presented at trial demonstrated that Schell was still communicating with him and that she invited him to call her despite anything Carmela may have told him. However, evidence was presented at trial in the form of Schell and Carmela's testimony that Schell was no longer having contact with Boude and did not invite him to call their home or to come to their residence. Additionally, the multiple emails and voice mails submitted into evidence support Schell and Carmela's testimony that Schell had cut off communication with Boude. Specifically, Boude states in these voice mails and emails that Schell is not having contact with him, which directly contradicts Boude's testimony that Schell was continuing to contact him and that everything seemed "fine" between them. Although the trial court did not find sufficient evidence presented at the trial to determine that Schell had directly told Boude not to call her or come to her residence, there clearly was evidence supporting a determination that Schell was not contacting Boude and inviting him to call and come to her residence as Boude claimed. Therefore, the trial court's conclusion that Boude committed telephone harassment was not against the manifest weight of the evidence due to Boude's allegation that Schell invited him to continue contacting her.
 {¶ 25} Boude's first assignment of error is without merit and overruled.
Appellant's second assignment of error:
 {¶ 26} Boude argues that his conviction for criminal trespass was against the manifest weight of the evidence because Schell invited him onto the property. Additionally, Boude argues that even if Carmela's warning to Boude not to come onto their property was sufficient notice, this notice was rescinded by Schell's actions in continuing her relationship with Boude. We disagree.
 {¶ 27} R.C. 2911.21 provides:
 {¶ 28} "(A) No person, without privilege to do so, shall do any of the following:
 {¶ 29} "* * *
 {¶ 30} "(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access."
 {¶ 31} Boude argues that the State failed to prove that Schell ever instructed Boude not to come onto the property. Boude argues that Schell as a resident of the property had the authority to grant a privilege to Boude to come onto the property despite any previous instruction from Carmela not to enter the property. Therefore, Boude argues that the fact that the trial court found Boude guilty of criminal trespassing means that it interpreted the statute to mean that only Carmela could grant Boude the privilege to enter onto the property because she had instructed him that he could not come onto the property. We disagree.
 {¶ 32} Rather, the trial court likely simply did not find Boude's evidence that Schell had invited him onto the property credible. The evidence was contradictory as to whether Schell had informed Boude that he could come onto the property as he alleged. Schell testified that she made no further contact with Boude and denied telling him he could come to the house. Additionally, Boude's allegation that Schell was continuing to contact him, although supported by some defense witnesses, was contradicted by the voice mails and emails Boude himself sent Schell. The trial court was justified in finding Boude's allegation that Schell invited him to the residence lacking in credibility. It was not against the manifest weight of the evidence to conclude that Schell did not invite Boude to the residence after Carmela told him he could no longer come onto the property and, therefore, that Boude was trespassing when he came onto the property.
 {¶ 33} Additionally, Boude argues that Schell rescinded Carmela's instruction to him not to come onto the premises through her actions. In support of this argument, Boude again points to his evidence presented at trial indicating Schell was continuing to contact him and that she was indicating to him that everything was "fine" in their relationship. However, as we have stated, ample evidence was presented in the form of Schell and Carmela's testimony along with the admission of voice mails and emails that Schell had ceased contact with Boude. This evidence directly contradicted Boude's allegation that Schell's actions indicated he could come over to her residence on the dates in question. The trial court was free to weigh the evidence and find Boude's allegation that Schell invited him over to her residence incredible. Boude's conviction for criminal trespassing was not rendered against the manifest weight of the evidence by Boude's allegation that Schell's actions indicated Boude could enter the premises.
 {¶ 34} In any case, the law is clear that if the owner of the property, in this case Carmela, has directly told the defendant that he is prohibited from entering the property, any permission granted by Schell, a mere licensee, would be invalid. Mariemontv. Wells (1986), 33 Ohio Misc.2d 9, 11.
 {¶ 35} Boude's second assignment of error is without merit and is overruled.
 {¶ 36} The judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.
[1] In the interest of clarity, Carmela Schell will hereinafter be referred to by her first name, Carmela, while Danyel Schell will continue to be referred to by her last name.